**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL J. HALLMARK,<br><br>               Plaintiff,<br><br>     vs.<br><br>TAKATA CORPORATION, TK HOLDINGS,<br>INC., AMERICAN HONDA MOTOR CO.,<br>INC., HONDA OF AMERICA MFG., INC.,<br>WEST HERR AUTO GROUP, WEST HERR<br>DOE DEFENDANTS 1-3,<br><br><br><br>             Defendants. | Case No. 1:23-cv-00981-LJV-JJM<br><br>**MEMORANDUM OF LAW** |

**I.**

**STATEMENT OF FACTS**

**A. The Mauch Declaration**

The Declaration of Marion Mauch is annexed hereto as Exhibit "A." Mauch is a Senior Counsel employed by American Honda Motor Co., Inc., and has personal knowledge of the facts and circumstances of this matter, as fully set forth in his Declaration.

Mauch avers that on or about September 21, 2023, Plaintiff purported to serve Honda of America Manufacturing, Inc. ("HAM") with the summons and complaint in this action.

Plaintiff, who was *pro se* at the time, filed suit against Defendant HAM and all other captioned Defendants on or about September 18, 2023, alleging personal injury on September 27, 2020, due to purported defective Takata airbags that were installed in Plaintiff's 2011 Honda Accord. See *Plaintiffs complaint* on CM/ECF Doc. No. 1.

However, as Mauch explains, HAM had ceased to exist as a corporate entity as of April 1, 2021 (Exhibit "A" at ¶ 2). At that time, HAM's operations were merged into a new company

161870795.1

called Honda Development & Manufacturing of America, LLC (hereinafter "HDMA"). HDMA has no record of service of a summons and complaint in this matter ever having been attempted on HDMA or the defunct HAM (Ibid).

Upon receipt of the summons and complaint on or about September 21, 2023, AHM assigned the law firm of Lewis Brisbois Bisgaard & Smith LLP ("LBBS"), to defend the claims against AHM/HAM as well as the claims asserted against additional named defendants, Takata Corporation and TK Holdings, Inc. (the "Honda/Takata defendants") (Ibid., at ¶ 3).

On or about October 16, 2023, AHM was notified by LBBS that the entire case had been dismissed as to all Honda/Takata defendants, and that Plaintiff would pursue his claim through the Takata Airbag Tort Compensation Trust Fund ("TATCTF") (Ibid., at ¶ 4).

Based upon this advice from counsel, AHM thereafter operated under the belief that no Answer to the complaint needed to be filed with respect to any Honda/Takata defendant, and no other action needed to be taken on their behalf (Ibid., at ¶ 5).

From October 16, 2023, to August 5, 2025, AHM received no information of any kind that this case was continuing against the defunct HAM or any Honda/Takata defendant. No one at AHM was ever informed that the dismissal of HAM or any Honda/Takata defendant had been vacated. AHM was not served with Plaintiff's Motion to Restore (Ibid., at ¶ 6).

On August 5, 2025, the "Clerk's Entry of Default" was received by AHM. This was the first notice of any continued litigation in this case against HAM or any Honda/Takata defendant (Ibid., at ¶ 7).

Based upon the foregoing, at all times prior to August 5, 2025, none of the Honda/Takata defendants had any reason to believe they were or could be in default in this matter. If such a default occurred, it was certainly not "willful" (Ibid., at ¶ 8).

161870795.1

On September 27, 2023, plaintiff filed Proofs of Service in connection with the Summons served on all the captioned Defendants. See *Summons' proofs of service* on CM/ECF Doc. No. 3. Based upon this date of service, HAM's answer was due by October 12, 2023.  However, no Answer was filed because the entire case had already been dismissed.

### B.  The Cunningham Declaration

The Declaration of Troy Cunningham is annexed hereto as Exhibit "B."  Cunningham was the LBBS attorney assigned to the defense of the action in September 2023 (Ibid., at ¶ 2).  At that time, he was advised via correspondence from a Gwendolyn Black, Esq., that she was representing Plaintiff's interests in the action (even though Plaintiff would remain designated as a pro se litigant).  From September 21, 2023 through October 16, 2023, Cunningham communicated with Ms. Black and her colleague, Rand Eddy, Esq., was CC'd on emails per Ms. Black's request (Ibid).

On September 29, 2023, a telephone conference was held between Cunningham, LBBS associate Ron Neuman, and Gwendolyn Black, with email correspondence memorializing the same regarding dismissing without prejudice all the claims asserted against all four (4) Takata/Honda defendants, based on Plaintiff's ability to bring a claim with The Takata Airbag Tort Compensation Trust Fund ("TATCTF") and that Honda had been released from any liability of any nature arising out of or relating to any Takata airbag inflator claims due to the channeling injunction issued by the United States Bankruptcy Court for the District of Delaware (Ibid., at ¶ 6).

On the same date of September 29, 2023, a proposed exemplar Stipulation of Dismissal was emailed to Gwendolyn Black, Rand Eddy, and the Plaintiff, at their request, to be formatted and finalized. The Takata/Honda defendants were not asked to review or approve the final format of the Stipulation before filing (Ibid., at ¶ 7).

161870795.1

The parties' agreement was that the Stipulation was intended to dismiss, without prejudice, the case as to the Takata/Honda defendants. Based on Cunningham's recollection of the phone and email discussions about this matter, the parties fully intended that all four (4) Takata/Honda defendants be named in the Stipulation of Dismissal. However, the defendant HAM was mistakenly and inadvertently omitted from the Stipulation due to an error. While all counsel intended that the defunct "HAM" be released from the action for the same reasons as the other Honda entities, the attorneys collectively missed that HAM had been omitted from the said Stipulation (Ibid., at ¶ 8).

On October 12, 2023, Plaintiff filed the Stipulation of Dismissal. Cunningham's understanding was that this would dismiss without prejudice all the claims asserted against all four (4) Takata/Honda defendants. Upon the filing of the Stipulation, Cunningham maintained the understanding that the defunct "HAM" would be released together with the other Honda entities, and he confirmed the filing of the Stipulation of Dismissal upon review of the CM/ECF case file (Ibid., at ¶ 9).

On October 16, 2023, Cunningham observed, upon review of the CM/ECF case file, that the _entire_ case had been dismissed and closed via Court Order as to _all_ defendants, including HAM. Thereafter, LBBS and the Takata/Honda defendants considered the matter closed and resolved, and Cunningham informed Honda representatives of the same (Ibid., at ¶ 10).

Cunningham confirms that it was for those reasons that LBBS did not appear in the action or file an Answer on behalf of the defunct HAM entity (Ibid., at ¶ 11). He amicably left LBBS in March 2024 to pursue other career opportunities. From October 16, 2023 up until his departure from the firm, he maintained the understanding that the case against the defunct HAM under

161870795.1

Docket No. 1:23-cv-00981-LJV-JJM had been dismissed and closed, and that Plaintiff would instead pursue a claim through TATCTF (Ibid., at ¶ 12).

On August 11, 2025, Cunningham was advised by counsel from LBBS that the default had been entered, and this as the first time he had heard of the matter since October 16, 2023 (Ibid., at ¶ 13). Cunningham confirms that the Honda entities never received any notice or service of plaintiff's efforts to restore the case to active status, or that the case was ultimately restored to active status against any Defendant (Ibid., at ¶ 14). Finally, Cunningham further confirms that HDMA has meritorious defenses to the action (Ibid., at ¶ 15).

## C. **The Dismissal and Entry of Default**

On October 12, 2023, the same day that HAM's Answer would have been due, Plaintiff signed and filed *in person* with the Clerk of the Western District of New York the aforementioned Stipulation of Dismissal, which was promptly uploaded to the case's CM/ECF file (see CM/ECF Doc. No. 4).

That same day, the co-defendants West Herr Auto Group and West Herr Doe Defendants 1-3 ("West Herr defendants") filed their Answer to the Amended Complaint with cross-claims.

On October 16, 2023, a Text Order was issued by the Hon. Lawrence J. Vilardo accepting the Stipulation of Dismissal filed by the *pro se* plaintiff as a Notice of Voluntary Dismissal on behalf of **_all_** named defendants, not just the Takata/Honda defendants (see CM/ECF Doc. No. 6). Based upon that order, the case was closed and marked "disposed" by the Clerk of the Court.

Based on the fact that the case had been marked fully disposed by the Court as of October 16, 2023, all of the Takata/Honda defendants reasonably believed the case had been fully resolved and that there was no need to file an Answer, appear, or otherwise litigate the case.

161870795.1

On or about May 28, 2024, Plaintiff obtained new counsel.  A Notice of Appearance was filed by Baruch S. Gottesman, Esq. on Plaintiff's behalf.

Almost five months later, on October 16, 2024, Plaintiff filed a motion to restore the case to the active calendar.  Importantly, Plaintiff's motion explicitly requested that the case be re-activated ***only as against the West Herr defendants***, not against HAM or any other Honda entity.

Indeed, Plaintiff's Memorandum of Law at ¶2 included HAM in the list of entities which the parties intended to dismiss via the Stipulation:

'Specifically, the Complaint named as Defendants:
 (i.) Takata Corporation;
 (ii.) TK Holdings, Inc.;
 (iii.) American Honda Motor Co., Inc.;
 (iv.) Honda of America Manufacturing, Inc.;
 (v.) West Herr Auto Group; and
 (vi.) West Doe Defendants 1-3
See Complaint ¶¶ 9-13.

The Stipulation of Dismissal, released without prejudice:
 (i.) Takata Corporation;
 (ii.) TK Holdings, Inc.;
 (iii.) American Honda Motor Co., Inc.;
 **(iv.) Honda of America Manufacturing, Inc.;**
See Stipulation of Dismissal, p. 1.'" (emphasis added)

Based on the foregoing, the record is clear that Plaintiff and LBBS all along intended to release HAM from the action together with the other Honda entities, and that HAM was omitted from the Stipulation only because of a error.

Indeed, Plaintiff's motion further stated that he "never intended to (and did not) dismiss the case against the West Herr Defendants, the Plaintiff respectfully submits that any order Dismissing the case against the West Herr Defendants was done by error, by mistake, inadvertence, and surprise, and is therefore void" (Ibid., at ¶7).  HAM was conspicuously omitted from this statement by Plaintiff's counsel.

Importantly as well, Plaintiff did not attempt to serve HAM or any other Honda entity with the motion to restore. According to the Certificate of Service the motion was served on October 16, 2024, "upon counsel for all Appearing Parties using the court's CM/ECF system," and listed only Goldberg Segalla LLP as counsel for the West Herr defendants (see CM/ECF Doc. No. 8 at pp. 2, 8). HAM was *not* listed as a recipient.

On October 31, 2024, the West Herr defendants filed opposition to the motion to restore and, likewise, did not include HAM on their service list (CM/ECF Doc. No. 9).

On December 16, 2024, the Hon. Lawrence J. Vilardo issued a Decision and Order granting Plaintiff's motion to restore. Although Plaintiff had not moved to restore the case as against HAM, the Court granted that relief sua sponte, and explained why in a footnote (see CM/ECF Doc. No. 10 at p. 5, fn. 5). The Court explained that "[i]n [plaintiff's] motion, Hallmark says that his stipulation also dismissed Honda of America. Docket Item 8-1 at 2. But Hallmark did not mention that defendant in his stipulation. See Docket Item 4. The Court therefore vacates its prior order dismissing Hallmark's claims against Honda of America. Of course, Hallmark still may dismiss his claims against that defendant under Federal Rule of Civil Procedure 41 if he wishes."

The Order further stated that the Court was correct in dismissing the case as to the defendants TAKATA CORPORATION, TK HOLDINGS, INC., AMERICAN HONDA MOTOR CO., INC., consistent with the Stipulation of Dismissal dated October 12, 2023.

The Decision and Order was E-filed on December 16, 2024, but HDMA/HAM was never informed of it, since LBBS had secured HAM's dismissal before its Answer was due, never filed a Notice of Appearance on its behalf, and was not receiving ECF alerts.

On the same date, December 16, 2024, the Hon. Lawrence J. Vilardo issued an Order referring the case to U.S. Magistrate Judge, Hon. Jeremiah J. McCarthy.

161870795.1

On January 22, 2025, per CM/ECF Doc. No. 13, a minute entry was filed "for proceedings held before Hon. Jeremiah J. McCarthy: telephonic preliminary pretrial conference held on 1/22/2025. The parties update the court concerning the non-appearing defendant Honda of America Mfg. Plaintiff to file motion for default judgment … APPEARANCES (by phone): Baruch Gottesman for plaintiff; Kathleen Martin for West Herr defendants. (Teams) (JD) (Entered: 01/22/2025)."

Between January 22, 2024, and June 17, 2024, based on various filings in the case's CM/ECF file, Plaintiff and the West Herr defendants litigated and mediated the underlying claims, resulting in a Stipulation of Dismissal *with prejudice* being filed on April 21, 2025, dismissing the West Herr defendants from the case.

On June 17, 2025, the Court issued a Text Order accepting the filed Stipulation of Dismissal filed on April 21, 2025, and terminated the West Herr defendants from the case.

On July 27, 2025, Plaintiff filed a request to enter default against HAM along with an Affidavit in Support and Proposed Order.

On July 28, 2025, the Clerk of Court filed an entry of default against HAM and mailed a copy to its address (CM/ECF Doc. No. 21).

On July 28, 2025, Plaintiff filed an Affidavit of Service of the entry of default, indicating service on July 28, 2025, via First Class Mail.  This was the first notice to any Honda entity that a proceeding was continuing against the defunct HAM, following the complete dismissal and closure of the action on October 16, 2023.

### D. **Defendant's Proposed Answer**

Defendant HDMA, as the corporate successor in interest to the defunct HAM, submits a proposed Answer to the Amended Complaint (Exhibit "E").  Therein, HDMA submits that it has

161870795.1

meritorious defenses to Plaintiff's Amended Complaint.  HMDA denies the material allegations of the Amended Complaint and asserts numerous affirmative defenses.

Additionally, Mauch sets forth affirmative defenses in his Declaration, for example that Plaintiff's vehicle was not defective, and if the airbag did not deploy as the Plaintiff claims, it was not supposed to deploy as airbags do not deploy in all accidents (Exhibit "A" at ¶ 10).  Airbags are deployed by a complex algorithm that depends on many factors and circumstances of the collision, including speed, direction of force, size and weight of the vehicles involved, including whether occupants are belted and other factors (Ibid).

## II.

## ARGUMENT

### A.    THE DEFAULT AGAINST HDMA/HAM SHOULD BE VACATED BECAUSE ALL ELEMENTS OF FRCP 55 ARE ABUNDANTLY MET

Under Federal Rules of Civil Procedure ("FRCP") 55(c), the "Court may set aside the entry of a default for good cause[.]"  "Good cause" is not defined in FRCP 55(c). See *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d. Cir. 1993). Consequently, the Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default." *Id*. Those factors are: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id*.

Second Circuit precedent indicates that the courts weigh these factors, often without noting whether the presence or absence of any particular factor may be dispositive:

> In this case, there is an absence of willfulness, though the gross negligence weighs somewhat against the defaulted party; on the other hand, the presentation of a meritorious defense and the lack of prejudice to American weigh heavily in favor of Eagle. On balance, we conclude that the District Court's allowable discretion was exceeded. The decision of the District Court to deny the motion to vacate is reversed, and the case is remanded for further proceedings.

161870795.1

*Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 62 (2d Cir. 1996) (emphasis added).

"The dispositions of motions for entries of default . . . under Rule 55(c) are left to the sound discretion of [the] district court." *Id*. at 95. The standard to relieve a party from entry of default under Rule 55(c) is "lenient," in contrast to the heightened standard under Rule 60(b) for relief from a final default judgment. *Meehan*, 652 F.2d at 277; see also *Gov't Emps. Ins. Co. v. Five Boro Psych. Servs., P.C.*, No. 12-CV-2448, 2013 WL 12358694, at *3 (E.D.N.Y. Feb. 8, 2013).

Moreover, "defaults are generally disfavored and are reserved for rare occasions." *Enron*, 10 F.3d at 96. As such, where "doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id*. The court's preference is to resolve disputes on the merits. See *Traguth*, 710 F.2d at 94. In other words, "good cause" and the criteria of the Rule 60(b) set aside should be construed generously. See, e.g., *Davis*, 713 F.2d at 915; *Meehan*, 652 F.2d at 277; 6 James W. Moore et al., Moore's Federal Practice ¶ 55.10[1], at 79 (2d ed. 1993).

**B.    THERE WAS NO "WILLFUL" DEFAULT**

"To find that a default was willful, it must be clear that the defaulting party engaged in deliberate or egregious conduct." *Argus Rsch. Grp., Inc. v. Argus Sec., Inc.*, 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002) (citing *Gucci Am. Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 634-35 (2d. Cir. 1998); *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). As such, "[n]egligence or carelessness does not amount to willfulness." *Id*. (citing *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Conversely, willfulness may be found "where the moving party [has] apparently made a strategic decision to default." *Am. All. Ins. Co*., 92 F.3d at 60 (quoting *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir. 1971)).

Here, the evidence conclusively rules out any possibility of a "willful" default by HDMA/HAM.  The procedural history as outlined above makes plain that HDMA/HAM never filed an Answer because the entire case had been dismissed and marked disposed, and all counsel involved in the dismissal intended for HDMA/HAM to be dismissed from the action.  The only reason it was omitted from the Stipulation of Dismissal was due to an error that cannot plausibly be described as "willful," based upon Cunningham's Declaration, Mauch's Declaration, and even Plaintiff's own motion to restore, as discussed above.  Simply stated, HDMA/HAM did not timely serve an Answer by October 12, 2023, because the entire case was dismissed in full on October 16, 2023, not because of some "willful" default.

Plaintiff's counsel cannot deny they too intended for HDMA/HAM to be included in the dismissal.  Plaintiff's own motion to restore specifically listed the defunct "HAM" as one of the entities that was intended to be dismissed, and was dismissed.  Nor did Plaintiff see any need to serve the defunct "HAM" with the motion to restore.  And since LBBS did not register on CM/ECF due to the aforementioned dismissal, it received no electronic notification of the Motion to Restore either.  Even after the case was restored by Order dated December 16, 2024, no notification of this Order was served upon HDMA/HAM.

In sum, the record is crystal clear that defendant HDMA/HAM's conduct in not answering Plaintiff's complaint was not "willful" for purposes of FRCP 55.

Importantly as well, the fact that HDMA/HAM were never served with the Motion to Restore means there was no jurisdiction over them, and said relief could not properly have been granted against them.  *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F. 2d 1080, 1085 (1st Cir. 1992)("an absence of jurisdictional authority would render both orders void").

### C.    PLAINTIFF WILL NOT BE PREJUDICED IF THE DEFAULT IS SET ASIDE

Under FRCP 55 the Court also evaluates any "prejudice" on the non-defaulting party, specifically "the level of prejudice that may occur to the non-defaulting party if relief is granted." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983).

However, "delay alone" does not establish prejudice. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "Similarly, costs and legal fees in pursuing a default judgment, as well as the cost incurred with respect to countering a defendant's motion to vacate, do not constitute prejudice." *Gesualdi v. Gayle Bard Landscapes, Inc.*, No. 10-CV-5762, 2011 WL 2457882, at \*3 (E.D.N.Y. May 31, 2011). Instead, "`[p]rejudice results when delay causes the loss of evidence, create[s] increased difficulties of discovery or provide[s] greater opportunity for fraud and collusion.'" *Sibley v. Choice Hotels Intern., Inc.*, 304 F.R.D. 125, 131 (E.D.N.Y. 2015) (quoting *Ward v. Rimkalawan*, No. 11-CV-4295, 2013 WL 1149068, at \*5 (E.D.N.Y. Mar. 19, 2013)).

Here, Plaintiff will not be "prejudiced" if the parties are returned to the status quo that existed before the Stipulation of Dismissal was filed.  Plaintiff would still have an opportunity to litigate against HDMA/HAM after the default is lifted.

Moreover if Plaintiff had believed it was important to litigate against HDMA/HAM, Plaintiff could have at least served its Motion to Restore upon them, but that was never done.  This omission eliminates any possibility of prejudice if the default is vacated.  Plaintiff's own subsequent dilatory conduct in requesting a default further undermines any purported claims of "prejudice."  HDMA/HAM were, at most, a mere afterthought for Plaintiff, otherwise Plaintiff would have promptly sought appropriate relief after the case was first dismissed.

D.    **MERITORIOUS DEFENSES**

"A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron*, 10 F.3d at 98. However, "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980); see also *Davis*, 713 F.2d at 916. The Second Circuit Court of Appeals as further stated "[t]o satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Eagle Ins. Co.*, 92 F.3d at 61. Instead, "[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Id* (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir.1988)).

In the instant matter, HAM/HDMA submits that it has meritorious defenses to the complaint as set forth in the proposed Answer (Exhibit "E"), and Declarations of Mauch and Cunningham.

First, Plaintiff's claim was subsumed in the Takata trust, and even Plaintiff's counsel understood that and consented to discontinue against all Honda entities, as discussed above. Second, the proposed Answer (Exhibit "E") denies the material allegations of Plaintiff's complaint and asserts numerous affirmative defenses.  In particular, HAM/HDMA denies that the vehicle was defective.  Even if the airbag did not deploy as the plaintiff claims, it was not supposed to deploy, as airbags do not deploy in all accidents. Furthermore, airbags are deployed by a complex algorithm that depends on many factors and circumstances of the collision, including speed, direction of force, size and weight of the vehicles involved, including whether occupants are belted and other factors (Exhibit "A").

161870795.1

Since all elements of FRCP 55 are met, the instant motion should be granted and the default vacated.

**III.**

**<u>CONCLUSION</u>**

Based on the above, Defendant HDMA respectfully requests that the Court vacate the Default and allow it to serve the annexed proposed Answer, so that this case can be heard on its merits, as the law favors.

Dated: New York, New York
      August 20, 2025

                                              _____
                                                  LUKE S. SHEMETH, ESQ.